UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BONESO BROTHERS CONSTRUCTION, INC, <br><br> Plaintiff, <br><br> v. <br><br> SAUER, INC., et al., <br><br> Defendants. | Case No. 17-CV-02608-LHK <br><br> **ORDER GRANTING FIC'S MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> Re: Dkt. No. 18 |

Plaintiff Boneso Brothers Construction, Inc. ("Plaintiff") sues Defendants Sauer, Inc. ("Sauer"), Sauer Group, Inc. ("SGI"), and Federal Insurance Company ("FIC") (collectively, "Defendants") for causes of action arising out of a federal construction project. *See* ECF No. 6 ("FAC"). Before the Court is FIC's motion to dismiss three of Plaintiff's causes of action. ECF No. 18 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS FIC's motion to dismiss with leave to amend.

**I.    BACKGROUND**

**A.  Factual Background**

Under the Miller Act, 40 U.S.C. §§ 3131–34, "[b]efore any contract of more than $100,000 is awarded [to a general contractor] for the construction, alteration, or repair of any public building

or public work of the Federal Government, [the general contractor] must furnish to the Government," inter alia, a "payment bond with a surety . . . for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b)(2). Pursuant to the Miller Act, any person that (1) "has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished"; and (2) "has not been paid in full" for that labor or material, "may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought." *Id.* § 3133(b)(1).

On February 16, 2014, Defendant Sauer, "a corporation existing under the laws of the State of Pennsylvania with a principal place of business" of Jacksonville, Florida, was awarded a contract (the "Prime Contract") by the United States Army Corps of Engineers "to design and build the Operational and Readiness Training Complex at Fort Hunter Liggett Army base" in California (the "Project"). FAC ¶¶ 2, 8. To meet the requirements set forth in the Miller Act (as described above), Sauer obtained a payment bond from Defendant FIC, a surety "operating and existing under the laws of the State of Indiana, with a principal place of business" of Indianapolis, Illinois," on February 6, 2014. *Id.* ¶¶ 4, 9, Exh. 2. In the payment bond, Sauer and FIC agreed to be bound jointly and severally for the payment of any persons furnishing labor and materials on the Project in the event that Sauer failed to make prompt payment. Specifically, the payment bond (1) lists Sauer as the "Principal" and FIC as the "Surety"; (2) lists a "penal sum of bond" of $56,038,640.00; (3) states that FIC agrees to "bind[] itself, jointly and severally with the Principal, for the payment" of up to $56,038,640.00; and (4) states that the "above obligation"—meaning the joint and several obligation of FIC and Sauer to pay up to $56,038,640.00—"is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material, or both in the prosecution of the work provided for in the contract" between the government and Sauer. FAC Exh. 2.

Plaintiff alleges that Sauer "committed . . . to self-perform 15% of the Prime Contract amount" and "listed their affiliated company, SGI, as the entity to self-perform the mechanical portion of [the Prime Contract], estimated at approximately $10,000,000." *Id.* ¶ 10. SGI is a

2

"subsidiary corporation of" Sauer "operating and existing under the laws of the State of Ohio with a principal place of business" of Columbus, Ohio. *Id.* ¶ 3. Thus, Plaintiff states that Sauer "entered into a subcontract agreement with SGI for the subcontract work of plumbing, HVAC, and controls & testing" on June 16, 2014. *Id.* ¶ 11.

However, Plaintiff alleges that "SGI did not actually perform any work on the Project, or performed only *de minimus* work on the Project, with [its] own forces," and instead "subcontracted the majority of their responsibility for the mechanical work to [Plaintiff], excluding controls and testing, which was subcontracted to others." *Id.* ¶¶ 12–13. Specifically, Plaintiff states that on October 30, 2015, SGI and Plaintiff "entered into a plumbing and HVAC subcontract for the Project . . . for $9,697,177." *Id.* ¶ 14. Because of the self-performance requirements on Sauer and SGI in the Prime Contract, Plaintiff alleges that SGI demanded that its subcontract with Plaintiff "be reduced by the amount of labor SGI would supply to [Plaintiff] . . . and the equipment and services SGI would purchase directly for [Plaintiff's] scope or work." *Id.* ¶ 15. As a result, Plaintiff asserts that the "effective" value of the subcontract between Plaintiff and SGI was $6,609,462. *Id.* Plaintiff also alleges that Plaintiff "was to remain responsible for all administration and performance of the SGI 'self-performance' work." *Id.*

Plaintiff asserts that Plaintiff "has fully performed all obligations required to be performed by it under" its subcontract with SGI, but "has not been paid in full and is still owed at least $4,574,138 for the value of labor, services, materials, equipment, and supplies furnished to the Project." *Id.* ¶¶ 19, 21. Plaintiff further alleges that SGI "caused a multitude of . . . disruptions that resulted in cost overruns on labor, material, and equipment by [Plaintiff]," such as "numerous and continuous changes to the sequence and order of the work" and "Delays in access to the work," "all of which resulted in additional costs to [Plaintiff] in an amount in excess of $4,574,138.00." *Id.* ¶ 43. In addition to SGI's failure to pay Plaintiff in full, Plaintiff appears to allege two other ways that SGI breached its subcontract with Plaintiff. First, Plaintiff asserts that SGI was contractually obligated, but failed, to provide Building Information Modeling ("BIM") services to Plaintiff. *Id.* ¶¶ 29, 44. Second, Plaintiff alleges that SGI breached its subcontract with

3

Plaintiff "by, inter alia, [] fail[ing] to timely and adequately schedule the various trades on the Project and [] fail[ing] to properly administer the Project." *Id.* ¶ 45.

Relatedly, Plaintiff alleges that "within the past four years, SGI has become indebted to [Plaintiff] because an account was stated in writing by and between SGI and [Plaintiff], in which it was agreed that SGI would be indebted to [Plaintiff]." *Id.* ¶ 49. Plaintiff further states that "the sum of $4,574,138.00, which is the reasonable value of services and materials provided by [Plaintiff] to SGI, invoiced by [Plaintiff] to SGI . . . is due and unpaid despite [Plaintiff's] demands." *Id.* ¶ 50. Further, Plaintiff asserts that, also "within the past four years," "SGI has become indebted to [Plaintiff] on an open book account for money due in the sum of $4,574,138.00, invoiced by [Plaintiff] to SGI," and that SGI has "failed and refused . . . to pay" Plaintiff even though "[d]emand has been made on SGI for the above-mentioned sum." *Id.* ¶ 52.

Finally, Plaintiff asserts that "pursuant to the Payment Bond, [FIC] and SGI are jointly and severally liable for the damages sustained by [Plaintiff]." *Id.* ¶ 47.

### B. Procedural History

On May 5, 2017, Plaintiff filed its original complaint on May 5, 2017. ECF No. 1. In its original complaint, Plaintiff named only one defendant—Sauer—and asserted only one cause of action (negligent administration of construction project) against Sauer. *Id.* at 4. The instant case was originally assigned to Magistrate Judge Howard R. Lloyd. *See* ECF No. 3.

On June 12, 2017, Plaintiff filed its first amended complaint ("FAC"). FAC. Plaintiff's FAC asserts seven causes of action, including: (1) recovery on the payment bond under the Miller Act (against Sauer and FIC), *id.* at 4–5; (2) negligent administration of construction project (against Sauer), *id.* at 5–7; (3) breach of contract (against SGI and FIC), *id.* at 7–8; (4) account stated (against SGI and FIC), *id.* at 8; (5) open book (against SGI and FIC), *id.* at 8–9; (6) work, labor, and materials (against SGI and FIC), *id.* at 9; and (7) quantum meruit (against SGI and FIC). *Id.* at 9–10.

On August 10, 2017, the parties filed a stipulation to stay the case until December 11, 2017 to allow time for the parties to pursue mediation. ECF No. 12. Judge Lloyd granted the parties'

4
Case No. 17-CV-02608-LHK
ORDER GRANTING FIC'S MOTION TO DISMISS WITH LEAVE TO AMEND

1  stipulation on August 14, 2017. ECF No. 13. However, on December 11, 2017, Plaintiff filed a status report notifying Judge Lloyd that "the mediation was unsuccessful and the matter did not settle." ECF No. 14 at 1.

Then, on January 10, 2018, Defendants Sauer and SGI answered Plaintiff's FAC, and SGI filed counterclaims against Plaintiff. ECF Nos. 16 & 17. Also on January 10, 2018, Defendant FIC filed the instant motion to dismiss. Mot. On January 12, 2018, Defendants filed a declination of Magistrate Judge jurisdiction. ECF No. 20. As a result, the instant action was reassigned to the undersigned judge. ECF No. 22.

On January 24, 2018, Plaintiff filed an opposition to FIC's motion to dismiss. ECF No. 24 ("Opp."). On January 31, 2018, FIC filed a reply. ECF No. 25 ("Reply"). Then, on February 21, 2018, Plaintiff answered SGI's counterclaims against Plaintiff. ECF No. 28.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially

5
Case No. 17-CV-02608-LHK
ORDER GRANTING FIC'S MOTION TO DISMISS WITH LEAVE TO AMEND

noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

In its motion, FIC moves to dismiss Plaintiff's causes of action for breach of contract, account stated, and open book, to the extent that they are asserted against FIC. *See* Mot. at 4–7. The Court first addresses Plaintiff's breach of contract cause of action against FIC. Second, the Court addresses Plaintiff's claims for account stated and open book against FIC.

### A. Breach of Contract

In its FAC, Plaintiff asserts its third cause of action for breach of contract against both SGI and FIC. *See* FAC at 7 ("Count Three: Breach of Contract against SGI and [FIC]"). However, Plaintiff does not allege that Plaintiff ever entered into any contract with FIC. Indeed, according to Plaintiff's FAC, the only contract that FIC entered into was the payment bond that Sauer obtained from FIC on February 6, 2014. *See* FAC ¶ 9; *id.* Exh. 2. Further, also according to Plaintiff's FAC, the only contract that Plaintiff entered into was its October 30, 2015 subcontract with SGI. *See* FAC ¶ 14; *id.* Exh. 4.

Plaintiff appears to allege that even though Plaintiff never entered into a contract with FIC, FIC should be held liable to Plaintiff for breach of contract based on *SGI's* alleged breach of the subcontract between SGI and Plaintiff. *See* FAC ¶¶ 42–46 (asserting breach of contract claim against both SGI and FIC but alleging facts regarding only SGI's breach of subcontract with Plaintiff). Plaintiff seems to assert two related grounds for imputing SGI's breach of that subcontract to FIC. First, Plaintiff's FAC alleges that "pursuant to the Payment Bond, [FIC] and SGI are jointly and severally liable for the damages sustained by [Plaintiff]." *Id.* ¶ 47. Second, Plaintiff argues in its opposition to FIC's motion to dismiss that the Miller Act payment bond that Sauer obtained from FIC incorporates the subcontract between SGI and Plaintiff. *See* Opp. at 4–6.

The Court agrees with FIC that Plaintiff has failed to state a breach of contract claim against FIC. First, with regards to Plaintiff's joint and several liability argument, the Court disagrees with Plaintiff that the Miller Act payment bond that *Sauer* obtained from FIC somehow made FIC jointly and severally liable for *SGI's* breach of contract. As an initial matter, the payment bond states only that FIC agreed to "bind[] itself, jointly and severally with *the Principal*, for the payment" of up to $56,038,640.00—the "penal sum" of the payment bond. FAC Exh. 2 (emphasis added). Thus, at the very most, the payment bond's joint and several liability clause makes FIC jointly and severally liable for damages caused by Sauer—the entity that is listed as the "Principal" in the payment bond—and not for damages caused by SGI. *See id.*

Further, even if Sauer and SGI could somehow be considered the same entity in the instant case, the payment bond would not make FIC jointly and severally liable for SGI's alleged breach

7

of its subcontract with Plaintiff. Under the terms of the payment bond, FIC is jointly and severally liable for up to $56,038,640.00 only if Sauer fails to "promptly make[] payment to all persons having a direct relationship with [Sauer] or a subcontractor of [Sauer] for *furnishing labor, material, or both* in the prosecution of the work provided for in the contract" between the government and Sauer. FAC Exh. 2 (emphasis added). Thus, the terms of the payment bond indicate that FIC is jointly and severally liable to Plaintiff—who had a "direct [contractual] relationship with . . . a subcontractor of [Sauer]" (SGI)—but only for Plaintiff's unpaid *labor and material*, and not for all possible damages arising from SGI's alleged breach of its subcontract with Plaintiff. This reading of the payment bond is supported by the text of the Miller Act, which is the very statute that required Sauer to obtain the payment bond from FIC in the first place. As explained above, the Miller Act requires any general contractor seeking a federal construction contract to obtain a payment bond "for the protection of all persons supplying *labor and material* in carrying out the work provided for the contract," 40 U.S.C. § 3131(b)(2) (emphasis added), and allows any person that "has furnished *labor or material* in carrying out work provided for" in the contract and that "has not been paid in full" for that labor or material to "bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought." *Id.* § 3133(b)(1) (emphasis added). Therefore, under the terms of the Miller Act payment bond, FIC is potentially jointly and severally liable for damages stemming from any labor and material that Plaintiff contributed to the Project that has yet to be paid, but not for all possible damages arising from SGI's alleged breach of its subcontract with Plaintiff. As a result, the payment bond does not hold FIC jointly and severally liable to Plaintiff for SGI's alleged breach of that subcontract.

Second, for similar reasons, the Court is not persuaded by Plaintiff's argument that the payment bond that Sauer obtained from FIC incorporates SGI's subcontract. Under California contract law, "[i]t long has been settled . . . that where a bond incorporates another contract by an express reference thereto, 'the bond and the contract should be read together and construed fairly and reasonably as a whole according to the intention of the parties.'" *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 39–40 (1999) (quoting *Roberts v. Sec. Tr. & Sav. Bank*, 196 Cal. 557,

8

Case No. 17-CV-02608-LHK
ORDER GRANTING FIC'S MOTION TO DISMISS WITH LEAVE TO AMEND

566 (1925)). In the instant case, the payment bond makes no "express reference" to SGI's subcontract with Plaintiff. *Id.* Plaintiff points to the payment bond's reference to "all persons having a direct relationship with . . . a subcontractor of" Sauer to argue that the payment bond "may be reasonably read as to incorporate or 'make a part' [all] subcontracts and sub-subcontracts executed under the Prime Contract." Opp. at 6 (quoting FAC Exh. 2). Contrary to Plaintiff's view, this text does not amount to an "express reference" to SGI's subcontract with Plaintiff, or to any other contract "executed under the Prime Contract," and is not suggestive of any intent by Sauer and FIC to incorporate subsequent contracts into the bond payment. Instead, that text—which focuses on the "persons" who have "furnish[ed] labor, material, or both" for the Project as opposed to the contracts that those "persons" enter into—is part of a provision specifying that FIC will be obligated to pay part or all of the bond only if Sauer fails to "promptly" pay those "persons" for their labor or material. FAC Exh. 2. In other words, the payment bond's reference to "all persons having a direct relationship with . . . a subcontractor of" Sauer merely makes FIC potentially liable to those "persons" for any unpaid labor or material furnished by those persons for the Project; it does not make FIC potentially liable for any damages—including contractual damages—beyond those that stem from unpaid labor or material. As a result, the payment bond cannot be said to incorporate SGI's subcontract with Plaintiff by "express reference."

In support of its breach of contract claim against FIC, Plaintiff argues that the Miller Act "provides [Plaintiff] a cause of action against" FIC. Opp. at 7–8. However, the Miller Act only allows Plaintiff to bring a cause of action "*on the payment bond*" against FIC for unpaid labor or material—which Plaintiff has already done in Count One of the FAC. 40 U.S.C. § 3133(b)(1) (emphasis added); *see* FAC at 4–5 ("Count One: Recovery on Miller Act Payment Bond Against [FIC], and [Sauer]"). Nothing in the Miller Act authorizes a sub-subcontractor to bring a breach of contract claim against a surety in the absence of any contractual agreement between the sub-subcontractor and the surety.

Accordingly, FIC's motion to dismiss Plaintiff's third cause of action for breach of contract is GRANTED. However, the Court affords Plaintiff leave to amend because Plaintiff

9

may be able to allege sufficient facts to state a breach of contract claim against FIC. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

**B. Account Stated and Open Book**

Plaintiff also asserts its fourth and fifth causes of action, for account stated and open book, respectively, against both SGI and FIC. *See* FAC at 8 ("Count Four: Account Stated against SGI and [FIC]"); *id.* ("Count Five: Open Book against SGI and [FIC]"). However, Plaintiff's FAC contains no factual allegations to plausibly suggest that either (1) any account was stated between FIC and Plaintiff; or (2) any open book account existed between FIC and Plaintiff. Instead, the FAC only contains factual allegations to support account stated and open book claims against *SGI*. Specifically, with regards to Plaintiff's account stated claim, Plaintiff's FAC alleges only that (1) "within the past four years, SGI has become indebted to [Plaintiff] because an account was stated in writing by and between SGI and [Plaintiff], in which it was agreed that SGI would be indebted to [Plaintiff]"; and (2) "the sum of $4,574,138.00 . . . is due and unpaid despite [Plaintiff's] demands." *Id.* ¶¶ 49–50. Further, as to Plaintiff's open book claim, Plaintiff's FAC alleges only that (1) "within the past four years, SGI has become indebted to [Plaintiff] on an open book account for money due in the sum of $4,574,138.00, invoiced by [Plaintiff] to SGI, exclusive of claims"; and (2) "[d]emand has been made on SGI for the above-mentioned sum, but they have failed and refused . . . to pay [Plaintiff]." *Id.* ¶¶ 52–53.

Plaintiff appears to argue that even though no account was stated between FIC and Plaintiff and no open book account existed between FIC and Plaintiff, FIC should be held jointly and severally liable for *SGI's* account stated and open book violations pursuant to the terms of the bond payment. *See* Opp. at 6 ("[Plaintiff] pleaded that [FIC] is jointly and severally liable for the contract amounts of the [subcontract between SGI and Plaintiff]. In Counts Four and Five, this pleading of joint and several liability is incorporated by reference." (citing FAC at 8)). However, Plaintiff's joint and several liability argument fails for Plaintiff's account stated and open book

10
Case No. 17-CV-02608-LHK
ORDER GRANTING FIC'S MOTION TO DISMISS WITH LEAVE TO AMEND

1 claims for the same reason that argument failed for Plaintiff's breach of contract claim. As the
2 Court explained above, the payment bond states only that FIC agreed to "bind[] itself, jointly and
3 severally with [*Sauer*] for the payment" of up to $56,038,640.00, so at the very most, the payment
4 bond's joint and several liability clause makes FIC jointly and severally liable for damages caused
5 by Sauer, and not for damages caused by SGI. FAC Exh. 2. Further, also as explained above,
6 under the terms of the payment bond, FIC is potentially jointly and severally liable for damages
7 stemming from any labor and material that Plaintiff contributed to the Project that has yet to be
8 paid, but not for all possible damages arising from SGI's misconduct towards Plaintiff. Thus,
9 contrary to Plaintiff's view, the payment bond that Sauer obtained from FIC does not hold FIC
10 jointly and severally liable for SGI's account stated and open book violations against Plaintiff.

Accordingly, FIC's motion to dismiss Plaintiff's four and fifth causes of action for account stated and open book is GRANTED. However, the Court affords Plaintiff leave to amend because Plaintiff may be able to allege sufficient facts to state an account stated or open book claim against FIC. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted))

## IV. CONCLUSION

For the foregoing reasons, FIC's motion to dismiss is GRANTED. In particular:

1. FIC's motion to dismiss Plaintiff's third cause of action, for breach of contract, is GRANTED with leave to amend.

2. FIC's motion to dismiss Plaintiff's fourth cause of action, for account stated, is GRANTED with leave to amend.

3. FIC's motion to dismiss Plaintiff's fifth cause of action, for open book, is GRANTED with leave to amend.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty days of this Order. Failure to meet this thirty-day deadline or failure to cure the deficiencies identified herein will result in a dismissal with

11

prejudice of the deficient claims or theories. Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rules of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: May 25, 2018

_Lucy H. Koh_
LUCY H. KOH
United States District Judge